UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

|  |  |
|---|---|
| BELLA NOKA,<br>    Plaintiff,<br><br>    v.<br><br>TOWN OF CHARLESTOWN;<br>CHARLESTOWN POLICE<br>DEPARTMENT; AND JEFFREY S.<br>ALLEN, *individually and in his*<br>*Official Capacity as Chief of the*<br>*Charlestown Police Department*,<br>    Defendants. | C.A. No. 18-040-MSM-LDA |

MEMORANDUM AND ORDER

Mary S. McElroy, United States District Judge.

Before the Court is the Defendants' Motion for Summary Judgment. (ECF No. 15.) The Plaintiff, Bella Noka, filed a Complaint alleging several equal protection claims and a claim for negligent infliction of emotional distress against the Town of Charlestown (the "Town"), the Charlestown Police Department (the "Charlestown Police"), and the former Chief of the Charlestown Police, Officer Jeffrey Allen (collectively, the "Defendants").[1] Ms. Noka alleges that the Defendants arbitrarily denied her police services based on her status as a member of the Narragansett Indian Tribe (the "Tribe"). (ECF No. 1.)

---

[1] Ms. Noka also sued Officer Kevin Ryan but moved to dismiss these claims pursuant to F. R. Civ. P. 41(a)(2). (ECF No. 20.) The parties agreed to a stipulation for partial dismissal, dismissing all claims against Officer Ryan. (ECF No. 24.)

1

For the reasons stated below, the Court GRANTS the Defendants' Motion for Summary Judgment. (ECF No. 15.)

## I. STANDARD OF REVIEW

When making a summary judgment determination, the Court must review the entire record and consider the facts and inferences in the light most favorable to the nonmoving party. *Cont'l Cas. Co. v. Canadian Univ. Ins. Co.*, 924 F.2d 370, 373 (1st Cir. 1991). Federal Rule of Civil Procedure 56(a) dictates that summary judgment should be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A genuine dispute of material fact is an issue that "may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

"Genuine issues of material fact are not the stuff of an opposing party's dreams. On issues where the nonmovant bears the ultimate burden of proof, [the nonmovant] must present definite, competent evidence to rebut the motion." *Mesnick v. Gen. Elec. Co.*, 950 F.2d 816, 822 (1st Cir. 1991) (citing *Anderson,* 477 U.S. at 256–57; *Garside v. Osco Drug, Inc.*, 895 F.2d 46, 48 (1st Cir. 1990)). Summary judgment evidence "cannot be conjectural or problematic; it must have substance in the sense that it limns differing versions of the truth which a factfinder must resolve at an ensuing trial." *Mack v. Great Atl. & Pac. Tea Co.*, 871 F.2d 179, 181 (1st Cir. 1989).

## II.   BACKGROUND

Ms. Noka brought this action seeking a declaratory judgment, injunctive relief, and compensatory and punitive damages. (ECF No. 1 at 10.) The following allegations are derived from the Complaint. *Id.* at 8-10.

In Count I, Ms. Noka alleges that the Defendants violated her right to equal protection under the Rhode Island Constitution by arbitrarily denying her a public service based on her status as a Narragansett Indian. *Id.* at 9 ¶ 57. In Count II, Ms. Noka alleges that Officer Allen violated her right to equal protection by arbitrarily denying her a public service based on her racial and ethnic identity as a Narragansett Indian in violation of the Fourteenth Amendment of the United States Constitution, under 42 U.S.C. § 1983. *Id.* at ¶ 58. In Count III, Ms. Noka alleges that the Town had a discriminatory policy or custom in providing public safety services to Narragansett Indian people in violation of the right to equal protection under the Fourteenth Amendment of the United States Constitution. *Id.* at ¶ 59. And in Count IV, Ms. Noka alleges that the Defendants' actions negligently caused her emotional distress. *Id.* at ¶ 60.

## III.   FACTS

The facts relevant to deciding this Motion for Summary Judgment are largely undisputed.

Ms. Noka, a member of the Tribe, served as the Chair of the Tribal Election Committee ("TEC") in 2013 and 2014. (ECF No. 16 at 1, ¶¶ 1-2.) In this role, she oversaw the election of the Tribal Council. *Id.* at ¶ 3. As TEC Chair, Ms. Noka

received threats from other members of the Tribe before its 2014 election. (ECF No. 16 at 1, ¶ 4.) One member threatened to burn down her home and another threw a bottle at her during the election. *Id.* at ¶ 5.[2] The results of the 2014 election disappointed several members of the Tribe who filed grievances which were found to lack merit. *Id.* at ¶ 6. The TEC certified the election results, and the elected members took office in August 2014. *Id.* at ¶ 7.

Chief Sachem Matthew Thomas of the Tribe requested Ms. Noka attend a Tribal meeting on January 31, 2015 at the Four Winds Community Center to discuss the 2014 election. (ECF No. 16 at 2, ¶ 8.) He assured Ms. Noka that Tribal Police would be at the meeting, but they were not. *Id.* at ¶ 17. Ms. Noka attended the meeting, along with Tribal members who were angry about the election results. *Id.* at ¶ 9. Several of these Tribal members attacked Ms. Noka, beating her, pulling her hair, spitting on her, kicking her, and throwing "ice bricks" at her. (ECF No. 23 at 2, ¶¶ 43-45.) Using pepper spray, Ms. Noka escaped the building. *Id.* at ¶ 46. Outside, Ms. Noka called 911 and requested that the Rhode Island State Police (the "State Police") respond to the incident. (ECF No. 16 at 2, ¶¶ 11, 13.) The 911 dispatcher notified the Charlestown Police and the State Police. (ECF No. 23 at 2, ¶ 47.) The Charlestown dispatcher also notified the State Police and the Tribal Police. *Id.* at ¶¶

---

[2] Ms. Noka claims she alerted the Charlestown Police of these threats and the bottle-throwing incident, but the Defendants dispute this. (ECF No. 27 at 2, ¶¶ 39, 41.) The Defendants also argue that any claim from 2014 is outside the statute of limitations. (ECF No. 15-1 at 7-9.) Ms. Noka does not dispute that these alleged incidents are outside of the statute of limitations but she proffers them solely as background. (ECF No. 21-1 at 18-19.) While the Court recognizes them as background, the alleged 2014 claims are not part of its analysis of Ms. Noka's claims for relief.

4

47-48. The State Police did not respond. *Id.* at ¶ 48. Charlestown Police Officers Lance Bennett and Thomas Piccirilli arrived on the scene and, at her request, transported Ms. Noka to the Charlestown Town Hall, where an ambulance was waiting to take her to the hospital. (ECF No. 16 at 3, ¶¶ 18-20.)³ Ms. Noka suffered lower limb contusions and a head injury. *Id.* at ¶ 29. She continued to experience a frontal headache and vomiting for two weeks following the incident. *Id.*

Charlestown Police Officer Kevin Ryan arrived at the Four Winds Community Center and informed Tribal members that they could make a statement or file a complaint with Charlestown Police, the Tribal Police, or the State Police. (ECF No. 16 at 3, ¶¶ 21-23.) Sometime after Officer Ryan arrived on the scene, a member of the Tribal Environmental Police, Lt. Spears, arrived to investigate the incident, purportedly at the request of a member of the Tribal Police. (ECF No. 16 at 3, ¶24; ECF No. 23 at 3, ¶ 50.) Lt. Spears thanked the Charlestown Police for their presence and, after a political opponent of Ms. Noka requested that Charlestown Police leave, Lt. Spears told the Charlestown officers that he "had the situation under control," and that they were "free to go." (ECF No. 23 at 3, ¶¶ 51, 52.) At the time of the incident, the Charlestown Police held concurrent jurisdiction with both the Tribal Police and the State Police on Tribal lands. (ECF No. 16 at 5, ¶ 34.)

---

³ Ms. Noka claims that she asked a Charlestown Police Officer at the hospital to take her statement, but he refused. (ECF No. 23 at 3, ¶ 49.) The Defendants dispute this claim, noting that there is no record of any Charlestown Police Officer being at the hospital and, although Ms. Noka initially stated that that officer was Officer Ryan, she has since withdrawn that claim. (ECF No. 27 at 3, ¶ 49.)

The Charlestown Police then referred all complaints related to the incident to the Tribal Police. (ECF No. 16 at 3, ¶ 25.) Two days after the incident, Ms. Noka contacted the Tribal Police to report the incident, and later followed up multiple times that week. (*Id.* at ¶¶ 26-27.) Tribal Police never interviewed Ms. Noka about the incident but the Chief of the Tribal Police obtained a written statement from Ms. Noka. (ECF No. 16 at 4, ¶ 28; ECF No. 23 at 3, ¶ 55.)

Exactly when the Charlestown Police took over the investigation again is disputed. But sometime after the incident, Charlestown Police Detective Ryan Gwaltney was assigned to investigate "the incident involving the spraying of pepper spray/mace involving Ms. Noka." (ECF No. 23 at 5, ¶ 63.) After reviewing statements from witnesses, the Charlestown Police submitted a criminal information package to the Department of Attorney General (the "Attorney General"). (ECF No. 16 at 4, ¶¶ 31-32; ECF No. 23 at 4-5, ¶¶ 61-62.) The Charlestown Police and the Attorney General determined that criminal charges were not appropriate. (ECF No. 16 at 5, ¶ 33.)[4]

Following the attack, Ms. Noka requested compensation from the Crime Victims Compensation Fund. (ECF No. 23 at 4, ¶ 58.) In a letter dated March 17, 2015, her claim was denied because "[a]ccording to the Charlestown Police Department, [she was] not a victim of a crime . . .". In addition, the letter reported

---

[4] Ms. Noka claims the Charlestown Police never interviewed her about the incident. (ECF No. 23 at 3, ¶ 56.) But the Defendants dispute this claim, noting that Ms. Noka, in her answers to interrogatories, revealed that she exchanged emails with Detective Gwaltney of the Charlestown Police and had in-person and phone conversations. (ECF No. 27 at 4, ¶ 56.)

6

that the Fund was unsuccessful in obtaining a police report from the Tribal police. *Id.* Three months later, after Ms. Noka had insisted that there had been an incident that the Charlestown Police responded to, that decision was reversed. *Id.* at ¶ 60.

## IV.   DISCUSSION

### A.   Equal Protection Claims

Under the Fourteenth Amendment of the United States Constitution, no state actor can "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. It is "clearly establishe[d] that the state does not have a constitutional duty to protect its citizens from private violence." *Soto v. Flores*, 103 F.3d 1056, 1063 (1st Cir. 1997) (citing *DeShaney v. Winnebago County Dept. of Social Services*, 489 U.S. 189, 197 (1989)). The State, however, cannot "deny its protective services to certain disfavored minorities without violating the Equal Protection Clause." *DeShaney*, 489 U.S. at 197, n. 3. Law enforcement officials therefore may not selectively deny protective services based on "invidious classifications such as race, gender, and religion." *Pariseau v. City of Brockton*, 135 F. Supp. 2d 257, 262–63 (D. Mass. 2001) (citing *Hayden v. Grayson*, 134 F.3d 449, 452, 453 n. 3 (1st Cir.1998)).

Ms. Noka argues that the Defendants violated the Equal Protection Clause by refusing to investigate the January 2015 incident at the Tribal meeting because of her status as a member of the Tribe. (ECF No. 21 at 14).[5] Invoking a standard

---

[5] Ms. Noka specifically notes that her claim is not a claim of failure to charge, susceptible to the doctrine of prosecutorial immunity, but a claim for failure to investigate. (ECF No. 21 at 19.)

explained in *Soto v. Flores, supra,* Ms. Noka argues that the Defendants' Motion for Summary Judgment must fail because she has put forth "sufficient evidence that would allow a reasonable jury to infer that it is the policy or custom of the [Defendants] to provide less protection" to members of the Tribe than to non-members. *Id.* (citing *Soto*, 103 F.3d at 1066).[6] The Court disagrees, finding the record void of any evidence suggesting that Ms. Noka was selectively denied services based on her status as a Narragansett Indian. The record instead teems with undisputed facts detailing how the Charlestown Police provided police services to Ms. Noka both during and after the January 2015 incident.

After Ms. Noka called 911, two Charlestown Police officers arrived at the Four Winds Community Center. (ECF No. 16 at 1, ¶ 18.) Ms. Noka asked the officers to remove her from the scene; the officers agreed and took her to the Charlestown Town Hall, where an awaiting ambulance took her to the hospital. *Id.* at ¶¶ 19-20. While Ms. Noka was being transported to the hospital, another Charlestown Police officer arrived at the Four Winds Community Center and informed Tribal members that they could make a statement or file a complaint with the Charlestown Police, the Tribal Police, or the State Police. *Id.* at ¶ 23. After the incident, Charlestown Detective Ryan Gwaltney investigated what happened and reviewed statements from witnesses. (ECF No. 16 at 4-5, ¶¶ 31-33; ECF No. 23 at 5, ¶ 63.) The Charlestown Police submitted a criminal information package to the Attorney General. (ECF No.

---

[6] Because she asserts a facial challenge to an acknowledged policy or custom, Ms. Noka insists she need not identify a comparator for her equal protection claims. (ECF No. 28 at 1-4.)

16 at 5, ¶ 33; ECF No. 23 at 4-5, ¶¶ 61-62.)  Both the Charlestown Police and the Attorney General ultimately determined that criminal charges were not appropriate. (ECF No. 16 at 5, ¶ 33; ECF No. 23 at 4-5, ¶¶ 61-62.)

From the outset, Ms. Noka received police services from the Charlestown Police.  Her 911 call did not go unanswered; her personal safety was not disregarded; and an investigation was conducted.  Without support in the record for Ms. Noka's claim that she was denied protective services, summary judgment for the Defendants is proper.

### B. *Monell* Claim

Ms. Noka's claim of municipal liability likewise fails.  Under 42 U.S.C. §1983, a municipality is liable "when its agents and employees committed constitutional violations, but not under a theory of *respondeat superior.*"  *Young v. City of Providence*, 404 F.3d 4, 24 (1st Cir. 2005) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691-95 (1978)).  "[I]t is only when the governmental employees' execution of a government's policy or custom . . . inflicts the injury and is the moving force behind the constitutional violation that a municipality can be liable."  *Young*, 404 F.3d at 24 (internal quotation marks omitted).  "Assessing liability against the [municipality] requires two basic elements: first, that [P]laintiff's harm was caused by a constitutional violation, and second, that the [municipality] be responsible for that violation."  *Id.* at 25-26.  Because Ms. Noka failed to show an underlying constitutional harm, this claim fails.

9

### C. Qualified Immunity for Officer Allen

As for the individual claims against Officer Allen, the Defendants argue he is entitled to qualified immunity because Ms. Noka cannot show he violated a clearly established right under federal law. (ECF No. 15-1 at 11.) Because the facts in the record do not present a genuine dispute as to whether Ms. Noka's constitutional rights were violated, the question of qualified immunity need not be addressed.

### D. Negligent Infliction of Emotional Distress

Under Rhode Island law, "[i]t is well settled that 'only two classes of persons may bring claims for negligent infliction of emotional distress: those within the zone-of-danger who are physically endangered by the acts of a negligent defendant, and bystanders related to a victim whom they witness being injured.'" *Shannahan v. Moreau*, 202 A.3d 217, 229–30 (R.I. 2019) (quoting *Gross v. Pare*, 185 A.3d 1242, 1246 (R.I. 2018)). Ms. Noka's claim for negligent infliction of emotional distress cannot move past the summary judgment stage because she has introduced no evidence that would allow her to invoke either of these recognized theories of liability. There is no evidence that Ms. Noka was in a zone of physical danger from any of the *Defendants'* conduct nor has she produced any evidence of medically established physical symptomatology caused by the Defendants' conduct. Summary judgment is therefore granted in favor of the Defendants.

## V. CONCLUSION

For the reasons stated, the Court GRANTS the Defendants' Motion for Summary Judgment. (ECF No. 15.)

IT IS SO ORDERED:

_____
Mary S. McElroy
United States District Judge

Date: March 8, 2021